HENRY HIDDEN ET AL. V. SAMUEL SAUNDERS.

Where a debtor, committed on execution, is discharged from imprisonment
in consequence of his creditor's neglect to pay his board in jail, after
having been duly served with notice that said debtor had applied for the
benefit of "An act for the relief of poor persons imprisoned for debt,'
such a discharge is not a satisfaction of the judgment, but a release from
imprisonment, with the same effect as if he had been admitted to the
poor debtor's oath, and an execution, obtained on said judgment, will run
against the property, but not the body, of the debtor.

THIS was an appeal from the Court of Common Pleas.
The action was debt, upon a judgment rendered in said
Court, January 25th, 1849. The defendant's plea set
forth that the plaintiffs caused execution on said judg-
ment to be issued from said Court, and, for want of goods
and chattels of the defendant to satisfy the same, caused
him to be taken thereon and committed to the State jail
in Providence County; that the plaintiffs were duly noti-
fied to appear and show cause why said defendant should
not have the benefit of the act entitled "an act for the
relief of poor persons imprisoned for debt;" and that said
plaintiffs did not pay over to the officer charged with the
service of such notification, nor to the keeper of said jail,
the sum of one dollar and twenty-five cents, nor any other
sum whatever for the board of said defendant, nor any
sum to the keeper of said jail for the future board of said

defendant, but made default thereof; whereupon, by reason of the default of said plaintiffs in paying and advancing said board, the said defendant became entitled to be discharged and was discharged from said jail by the keeper thereof. To this plea the plaintiffs demurred, and in the Court below STAPLES, J. sustained the demurrer.

*J. P. Knowles,* for the plaintiffs.

*Weeden,* for the defendant.

HAILE, J. delivered the opinion of the Court, (after stating the case.) By the rules of the common law a discharge of a debtor from commitment on execution, by the consent of the creditor, extinguishes the judgment.

This principle seems to be now settled by the judicial decisions of the highest judicial tribunals in England and in the United States, as will appear by reference to the following cases on this subject. *Basset* v. *Sutton,* (2 Met. 136.) *Vigers* v. *Aldrich,* (4 Burrows, 2482.) *Jaques* v. *Withey,* (1 Term. 557.) *Clarke* v. *Clemant & English,* (6 Term. 526.) *Tanner* v. *Hague,* (7 Term. 416.) *McFadden* v. *Parker,* (4 Dallas, 275.) *Yates* v. *Van Rensselaer,* (5 Johns. 364.) *Lathrop* v. *Briggs,* (8 Cowen, 171.)

But we apprehend that the correct decision of the question, as to the legal effect of the discharge of said defendant, does not depend so much upon the rigid rules of the common law, as upon the correct construction of the Act for the relief of poor persons imprisoned for debt, and of the acts in amendment thereof.

In construing these acts, in order to ascertain the

meaning of the Legislature, we should not consider them as separate and independent statutes, but the acts in amendment of the original act should be deemed part of said act, and construed not simply by the reference to the words and phraseology therein contained, but the great object of the legislature in enacting these laws should constantly be kept in mind ; to wit, the exemption of the body of the poor debtor from imprisonment for debt, and the compulsion of the creditor to pay expenses of the debtor's board while in prison.

Beyond this they certainly did not intend to deprive the creditor of his existing remedy for the collection of his debts. And the original act preserves and secures this remedy as to all property and estate of the debtor, who may be admitted to take the poor debtor's oath, by requiring him first to make and execute a deed of assignment of all his estate of every kind, except what is exempt from attachment by law, and wherever the same may be, to the keeper of the jail and his successor in said office and his assigns, in trust for the benefit of all his creditors in proportion to their respective demands. (Dig. of 1844, p. 169, § 10.)

And this act goes still further, and not only preserves the judgment in full force as to the debtor's property, where he is discharged on being admitted to the oath, but secures to the creditor an ample remedy against the debtor's future earnings. For, by the 29th section of said act, (Dig. of 1844, p. 72,) it is provided that neither the commitment of the prisoner nor his discharge shall be a satisfaction of the debt for which he was committed. If committed on execution, the plaintiff may take out another execution, which shall not, however, run against the body of the defendant, nor shall the defendant be held

to bail on the writ in such case. If the defendant be committed on mesne process, where he receives a certificate agreeably to the provisions of said act, if that fact be shown by plea to the Court or justice before whom the action is pending, then execution shall not issue against the body of the defendant.

And this section of said act, further carrying out the policy of our laws, provides that in no case shall the real estate of the defendant be attached, unless the defendant at the time of such attachment be absent from this State or concealed therein.

By an act in amendment of the aforesaid act " for the relief of poor persons imprisoned for debt," (Pub. Laws, p. 718, § 1,) it is provided that in case any creditor, his agent or attorney, shall be served with notification on the part of any person imprisoned for debt, to appear and show cause why such person should not have the benefit of the act to which this is an amendment, according to the provisions of the eighth and ninth sections thereof, that such creditor, his agent or attorney, shall forthwith pay over to the officer charged with such service the sum of one dollar and twenty-five cents for the past and future board of said prisoner. And it is rendered the duty of such officer to pay the money over to the keeper of the jail to which the prisoner shall be committed.

The main object of this amendatory act, undoubtedly, was to compel creditors to pay the expense of boarding poor prisoners imprisoned for debt, and not to affect the legal rights or remedies of creditors for the collection of their just debts, beyond the discharge of the debtor's body, and, at the same time, to relieve the poor debtor from imprisonment in cases where he was unable to pay his debts.

By the third section of this amendatory act it is provided that in case of any default on the part of the creditor, his agent or attorney, to make payment as aforesaid required, it shall be the duty of the keeper of the jail to discharge such prisoner from jail, stating in his formal discharge on the jail book the reason thereof.

It was contended on behalf of the defendant that such a discharge, as before stated, operated as an extinguishment of the judgment, because the statute was silent as to the legal effect of such a discharge.

But from a fair and reasonable construction of these statutes, keeping constantly in view the objects which the legislature had in passing them, we have been unable to come to that conclusion.

By the 29th section of the original act, to which this act is in amendment, the legal effect of a discharge on commitment on execution, is declared by clear and unequivocal language, and it is there clearly made manifest that it was the object of the act to discharge the debtor's body from imprisonment, and not to extinguish the judgment or exonerate his property from the payment of his debts.

Under the amendatory act the debtor, by the neglect of the creditor to pay board, may be discharged from imprisonment. But such neglect and discharge can raise no reasonable presumption that the creditor assented to the relinquishment of his debt; at most, the creditor's negligence can only raise the presumption that he deemed his debtor entitled to the benefit of the poor debtor's oath; this being all the debtor asked in his application.

The General Assembly well knew, that although they had entire legislative control over the remedy for the collection of debts, they had no constitutional power to pass

any law impairing the obligation of contracts. And to pass any law which might exonerate the debtor's property from the payment of his debts, without notice in that law that it was intended to repeal the then existing remedy for the collection of debts, would be an act of such gross injustice to creditors as cannot be judicially inferred.

The aforesaid act having declared in express terms the legal effect of a discharge of a poor debtor on being admitted to his oath, it would seem unnecessary that the amendatory act, when construed in connexion with the original act, should state the legal effect of a similar discharge for another cause, originating in the neglect of the creditor ; especially when such neglect raises the implied presumption that the debtor was entitled to be admitted to his oath.

And the judicial mind, familiar with the construction of similar statutes, would naturally come to the conclusion, that it was the object and intent of the legislature by the aforesaid act to exempt the body of the debtor from imprisonment, and not to discharge him absolutely from the payment of his just debts. This is the sole object which the poor debtor seeks in his application for the benefit of the aforesaid act, and it is unreasonable to suppose that the legislature intended to grant a greater benefit than the applicant asked.

A similar construction has been put upon an analogous English statute, enacted for the relief of insolvent debtors. And the case of *Nardin* v. *Battie*, (3 East, 87,) is directly in point. In that case it was decided that, if one of two defendants taken on joint *ca. sa.* be discharged under the insolvent debtor's act, that will not operate as a discharge of the other, the discharge of the former not being with the consent of the plaintiff. And in that case Lord ELLEN-

Hidden et al *v.* Saunders.

BOROUGH, C. J. says, " the discharge cannot be said to have been with the plaintiff's assent, because he did not choose to detain the party in prison at his own expense, nor can the law, which makes detriment to no man, in consequence of having directed the discharge of one defendant, so far implicate the plaintiff's consent against the fact as to operate as a discharge of the other."

Yet, at common law, the discharge of one joint debtor in execution, with the consent of the creditor, is an extinguishment of the judgment as to the other defendants.

These being our views upon the legal construction of said statutes as to the legal effect of the discharge of a debtor under them as aforesaid, the defendant's plea must be overruled, and the plaintiff's demurrer thereto sustained, and judgment must be rendered for the plaintiff.

But execution can issue only against the goods and chattels of the defendant, for his body is exonerated, by said discharge, from imprisonment for the collection of said debt.